The next matter on our calendar is, where did I put it? Jaen v. Sessions Oh, here it is. I have it. No, I don't. Jaen v. Sessions Yes, I found it. Sessions. Thank you. Sorry. Good morning, Counsel. Good morning. Thank you very much, and may it please this Court. This case is an immigration case about a very old rule of family law, one that is old enough to have been discussed by Blackstone. When two people are married and one of them gives birth to a child, both of those people are the legal and legitimate parents of that child, even when one of them may not have a biological relationship with that child. It's a strong presumption. It's a very strong presumption. And, in fact, the Supreme Court in Michael H. v. Gerald D. describes it almost as a substantive rule of law that is often described as a presumption. But, yes. Is Mr. Jaen detained, by the way? He is detained in New Jersey, yes. He is? Yes. We saw it and did not receive a bond. He did not? He had a hearing and didn't get a bond? He had a lower bond hearing and did not get a bond, so he is detained right now in New Jersey, yes. Wow. Okay. Yes. So that was the rule, both at common law, and it is the rule that has been preserved in the State of New York where his father resided and where he resides. The contrary rule, that a biological relationship is required, when Congress meant that, when they meant to depart, in other words, from the traditional rule, they said so explicitly, as they did in Section 309 of the INA, which is about children who are born outside of wedlock. There, a biological relationship is required, and that's exactly what Congress said. But once you're born within a legal marriage? Yes. You're presumed to be the child of that marriage? Correct. Even if there's evidence to the contrary? Yes. Under Section 301, because it doesn't contain that biological relationship rule, we have this marital presumption, which is a very, very old rule. What does it take to overcome this strong presumption? So there are various ways of verbal formulas of saying it, but in substance, what it means is that you need both to demonstrate not just that a biological relationship doesn't exist, because in many cases, we know, for example, in same-sex couples, which the Vermont Supreme Court and the New York Court of Appeals have said are entitled to the marital presumption, that no biological relationship will exist with one of the parents. You also need to show, essentially, that reason and common sense would be offended by a contrary result, and that is a very hard thing to do. So the brief by the Amici family law scholars has a great list of examples of cases where, you know, the courts did know that there was no biological relationship, but because, for example, the father did not testify to non-paternity or things like that, that the presumption was not rebutted. And most importantly, it has to happen in New York before the child turns 21, and it used to be before the child turned 2, for very good reasons. You want people to be settled in their affairs and to know what their legal rights and obligations are. So it's not impossible to rebut. The common law had some exceptions, but it's repeatedly described, without contradiction by the government, as one of the strongest presumptions known to the law, and that's for a very good reason. It protects the child's rights, but it also protects the privacy of the marital family from interference. Remember, this is a situation where Levi-Jane was raised by Jorge as his son. He lived with his siblings growing up in Panama. He came to New York. He referred to him as dad. You know, this is a marital family, and the lack of a biological relationship in that circumstance is exactly what the marital presumption is designed to sort of shield from disrupting this family's affairs. The government's really only contrary authority for the existence of this biological relationship rule, they don't say the statute requires it. The statute doesn't require it. They say that there are these two policy manuals of theirs that do require this rule, and I'll talk about, I think, kind of both of those in turn. Your position is that they aren't entitled to any kind of Chevron deference. Exactly right, and I don't understand them to even contradict that. They don't even ask for Chevron deference. They're not subject, and we just heard a lot about notice and comment. They don't go through the APA. There is no rulemaking. They revise them whenever they want. They say that on their website, so that's important. The USCIS manual is not even binding on immigration judges or the BIA, and this Court has held for that reason in the case we cite in the brief that it's not entitled to any kind of deference on this point whatsoever. So the USCIS manual, we really think, is right out. The Foreign Affairs manual, first of all, does not even, which is the State Department manual, does not even purport to be interpreting this section, Section 1401 or Section 301 of the INA, and it's just sort of making general statements about what constitutes a parent without sort of restricting it to this. So that's one problem. But the other problem is that the State Department does not administer the citizenship rules for people who are in the United States. That's what the night— There's only guidance for consular officers. Consular officers, you know, in Manila are— Exactly right. Yes, it's a set of rules that helps, you know, comes to the consulate office and says, I've just given birth and I want, you know, one of the certificates that will indicate this. It's a set of rules to guide that, but it's not purporting to be the kind of thing that would resolve a case like this for a person who's in the United States. And so that's why the Ninth Circuit, I mean, the government has been making this argument almost now for 20 years. The Ninth Circuit said in 2000, in the Scales case, that for this reason it was not entitled to any kind of deference and is, at any rate, would be inconsistent with the statutory text, even if it were, but it's not. And it's also, as we note, not the rationale that the BIA adopted. So for those reasons, really, a lot of the signs of meaning in this statute really all point in the same direction. The common law, the law of New York, the sort of ordinary rules of statutory construction, even the sort of larger principles of family unity kind of undergirding the INA, you know, the courts have discussed many times. All of this points in exactly the same direction. And so for that reason, we think we can be pretty confident that when Congress enacted this rule in 1952 and that they subsequently amended the immigration statutes many times, the immigration statutes have been amended many times since the Ninth Circuit's decisions on this matter has never been changed. And so although this is a case of first impression in the circuit, we really do think that all the available evidence points in the same direction. So if the Court doesn't have any further questions, I can reserve the balance of my time. We'll hear from the government. May it please the Court, Rachel Browning for the respondent. Do you agree that there's a very strong presumption of a child born within a marriage is legitimate? I agree, Your Honor, that as a common law concept and with respect to family law, yes, that is a strong presumption. We're simply challenging its applicability in this particular case. Why? Because it's the petitioner's burden to establish by a preponderance of the evidence that the circumstances at the time of his birth that he would have acquired citizenship at the time of his birth. When he was born, he was born in Panama in 1972. His valid, duly issued birth certificate at the time of his birth indicated that his biological parents or legal parents were both Panamanian citizens. Neither of them were United States citizens. The subsequent birth certificate was not issued until five years later, in which he acknowledged Mr. Borland as his United States citizen's stepfather, but even that certificate was issued simply for the limited purposes of scholastic purposes or something. It was not so that birth certificate should not outweigh the first contemporaneously issued birth certificate because the circumstances at birth are what control. You've admitted that there's a strong presumption that a child born within a legal marriage is the issue of that marriage. In certain contexts, Your Honor, yes, we agree with that. I mean, in certain contexts? Isn't that a basic rule in family law? It's a rule that is not absolute. It's a rule that can be overcome by clear and convincing evidence, and I would say that to the extent that that rule exists in this case, it would have been overcome by the issuance of a birth certificate acknowledging a different father who was of Panamanian citizenship. That's what has to control. I mean, Mr. Borland didn't even come into the scenario until five years later. Petitioner did not move to the United States and become part of his custody until nine years after that when he was 16. So I don't know how under those sets of circumstances Mr. Borland would have been presumed acknowledged father at the time of his birth when you have all of these countervailing factors. So that's what the Board was getting at in its decision. It acknowledged the Ninth Circuit's holding and scales in Solis Espinoza, but found the facts of this case clearly distinguishable such that the presumption of paternity doesn't need to apply to the situation because paternity was not in dispute at the time of his birth. Right. And the statute does not define parent any more specifically than a parent of a child. That's true, Your Honor. It doesn't talk about requiring a blood relationship. It does not state that specifically in the statute. We acknowledge that. Right. So we're dealing with a statute. That's how we determine the rules, correct? That's true. And to the extent that this Court would agree with the Ninth Circuit that it doesn't require a biological relationship, that still doesn't establish that Mr. Borland would have been the presumed father at the time of Petitioner's birth in Panama. So the Court doesn't need to decide whether former Section 1401A.7 requires a biological relationship or it does not, nor does it need to decide whether, as a general rule, New York State's or any state's presumption of paternity has any application in immigration law because under the circumstances of this case, his U.S. citizenship was not established at the time of his birth because the record demonstrates that he was born to two Panamanian citizen parents. In addition to assuming that he was a legitimate child, the family law professors remind us that it takes a lot to rebut this presumption of legitimacy. Your argument is that he was illegitimate. No, that is not our argument. In fact, the judge and board both said that they referred to Panamanian law in this situation, that under Panamanian law he was not considered illegitimate because he had an acknowledged mother and father who were both on his Panamanian-issued birth certificate. So the issue is not one of whether he's legitimate or not, it's whether under the law that existed at the time of his birth and the domicile of his birth that recognized his paternity, that should control the question of whether he acquired U.S. citizenship at the time of his birth. Petitioners haven't demonstrated... He would be considered the child of Borland under New York law? I suppose under New York law in certain contexts, but again, we're not talking about New York. For purposes of custody, for purposes of child support, certainly. I mean, I understand what the presumption of paternity means. The government doesn't contest that. We're simply saying that when determining whether someone acquires U.S. citizenship at the time of their birth, the circumstances at birth, as this Court said in Koalani, are what is determinative. There is no reference to Mr. Borland until five years later, and no custody until nine years after that. So I would say, again, to the extent that New York State's presumption of paternity would apply, it's been overcome by the circumstances of this case. Thank you. I have no further questions. Judge Winter, do you have any questions? No, I don't. Thank you, Your Honor. Appreciate it. Counsel, you've reserved a minute or two for rebuttal. Yes. Thank you, Your Honor. Very briefly, just a couple of things. Is it possible that this petitioner has two legitimate fathers? No. Our view is that the law of the State of New York, like biology itself, makes no provision for dual fatherhood. Panama may regard him differently, although there's no evidence that that's true. But our argument is, is he has one father, and that is the person who was married to his mother the day he was born, Jorge Borland. How do you deal with the Panamanian birth certificate? Well, so the Panamanian birth certificate doesn't purport to represent anything other than a fact we've said doesn't matter under the law. It says, biologically, there may be some evidence that he has a biological connection to someone else. But our point is that that fact is not what matters for determining parenthood when there is a marriage. So the certificate we care about is not the birth certificate, but the marriage certificate. And there are many cases that family law professors discuss where, for example, you've got some certificate saying, you know, a divorce certificate saying that there are no issue of the marriage. But when there is a child who was born before that divorce, nonetheless, the presumption of legitimacy applies. So in that circumstance, the birth certificate doesn't purport to represent anything that has legal effect, is our basic view. And it is not correct that it was the basis for the board's decision. The immigration judge did discuss it, but that's not what the board relied on. The only other thing to note, just very briefly, although it's true that Mr. Jane did not move to the United States permanently until he was a teenager, he shares that in common with all of his siblings or a bunch of his siblings who spent time growing up with their parents in Panama. Back and forth regularly? Yeah, back and forth somewhat, but regularly visited early as a child. And what the declarations from the family explain is, well, it was cheaper to raise children in Panama, so all of us spent time growing up with our grandparents, our mother's parents. So it's true that he didn't move to the United States permanently, but that's just how this family was. And so it's not a fact that indicates that, oh, he wasn't really connected to the family or anything like that. But at any rate, this is really a fairly easy case. All of those facts are interesting. But, you know, the rule is the rule. Pater est quem nuptiae demonstrant. The nuptial show who is the father. The petition should be granted. Thank you. Thank you both. Very interesting question. The next case on our calendar is on submission. So I will ask the clerk to adjourn court. But before doing so, let me remind you that United States v. Sawyer will reconvene this court between 1130 and 1145, right in this room. Thank you.